Will the clerk please call the next case? 116-05-57, Lake County Forest Preserve v. Workers' Compensation Comm'n, Angel Michael. Counsel, you may proceed. May it please the Court, Counsel, my name is Jacqueline Jednikowski, and I am here for the appellant plaintiff, Lake County Forest Preserve. As we are all aware, the issue before the Court today is whether the Commission's decision was against the manifesto of the evidence. Now, I understand under this standard, the Commission is due deference. However, I don't believe that constitutes complete deference. The facts of this case clearly support the finding that the Commission's decision was against the manifesto of the evidence. As the Court is aware, this case involves a gentleman who sustained an accident on March 13, 2007, when he slipped and fell. His initial course of treatment was conservative. An MRI was completed in April 2007. However, the MRI on that date did not reveal a disc herniation. By May 11, 2007, he had denied radicular complaints. And by June 2007, he himself reported that he was functioning well, was no longer taking the medications, and his treating orthopedic physician, Dr. Tack, had released him to work full duty. Now, the evidence admitted at trial showed that Mr. Blanco returned to work. He continued working full duty in his capacity with the Lake County Forest Preserve. What did Dr. Sittow have to say? Dr. Sittow was the physician that ultimately performed the surgery. Dr. Sittow did issue a causation opinion, finding that the surgery was ultimately related to the March 13, 2007 accident. However, it is our contention today that Dr. Sittow's opinion is flawed. Dr. Sittow did not issue his causation opinion until four years after the original accident. The causation opinion was drafted on February 23, 2011. Well, the commission knew that, didn't they? I believe the commission looked at that, Your Honor. However, I do not believe the commission weighed all of the medical records objectively. So we should re-weigh them? No, I would not ask the court to do so, Judge. Wait a minute, hold on. If we can't re-weigh them, what are we supposed to do with them? Based upon the facts that have been admitted, through even Dr. Sittow's opinion, I believe that they support an alternative finding. I don't think there's any dispute that had the commission decided this in the other direction, that wouldn't have been against the manifest weight of the evidence either. Because manifest weight of the evidence only requires that there be some relevant evidence in the record to support the commission's decision. And doesn't Dr. Sittow's opinion satisfy that requirement? Dr. Sittow did not present that opinion when he initially treated Mr. Blanco on March 20, 2009. At that juncture, Dr. Sittow already had two MRIs available for his review. Moreover, this was after Mr. Blanco had been placed at maximum medical improvement. Let's break that down for a second. I understand your argument, and it's a logical argument, that Sittow's opinion is flawed. But does this case stand or fall on Sittow's opinion? Tell me if we missed something. The claimant testified he slipped on black ice in March of 2007. He immediately sought medical treatment and complained of back and leg pain. He testified he had no prior back-related issues, no treatment, and no evidence was presented to rebut his testimony. Is that correct? That is correct, Your Honor. So even if you don't go along with Sittow, there's other cooperating evidence to support the commission's decision independent of Sittow, isn't there? Your Honor, I would respectfully disagree on the basis that the four MRIs that were documented in the medical records show progressive changes, two of which the surgical recommendation was based upon, and those two later MRIs are after Mr. Blanco had been placed at maximum medical improvement. Dr. Sittow did not present a surgical recommendation until June 2010, and this was based upon the 2010 MRI and the August 2009 MRI. Let me ask you this question and think about the answer to this. The determination that a claimant has reached MMI, does that legally mean the end of a causal relationship between a claimant's work accident and his condition of LB? Is that the state of the law? Your Honor, the MMI finding does indicate that the claimant's condition has stabilized. It doesn't mean there's an end of a causal connection after that date, does there? I suggest you a case law that says it doesn't mean that. So I don't look at that as a synchronized, as you get to MMI, that's the end of the causal connection. It's not the law. No, Your Honor, I understand. You would also argue that the medical records between June 2008 and March 2009, when Mr. Blanco presented to Dr. Sittow, do not contain any complaints of back pain. Now, the Commission does reference Dr. Nemekis' records. However, Dr. Nemekis was only the orthopedic surgeon. The Commission's decision does not reference the primary care physician's records, Dr. Noem. Dr. Noem treated Mr. Blanco on five different occasions during that time, and none of those records, which were admitted at the time of hearing, contained complaints of back pain. Moreover, Dr. Sittow did not believe that Mr. Blanco required surgery at the time of his March 2009 examination. He reviewed those MRIs, and he found that they revealed mild degenerative findings, and they were disc protrusions. However, he did not appreciate any significant neurologic abnormalities. There was a negative bilateral straight leg raise on March 20, 2009, and these are significant facts that do not appear to be weighed in the Commission's decision. The Commission also relied upon the testimony of Mr. Blanco, and as the Justices have pointed out, Mr. Blanco testified that he did have complaints of back pain, and that he also testified he had asked for treatment from June 2008 through March 2009. The Commission did rely upon this testimony. However, there was evidence through the testimony of the employer, as well as the payroll records, which document Mr. Blanco was working full duty, and not only was he working full duty, he was working overtime. I understand that there's... Counsel, I'm back to the same problem. Because all you want us to do is reweigh the evidence and make a different credibility finding than the Commission made. That's what you're asking us to do. We can't do that. Your Honor, respectfully, we believe that the record does not support the Commission's decision. It's our contention today. Well, there is evidence in the record to support it. You just don't like the weight that the Commission gave to it. You don't like the fact that the Commission specifically found Sitow's opinions to be persuasive, I think is the language that they used in the opinion. And you don't like the idea that they found Mr. Blanco to be credible. I can understand why you say that, because there certainly is evidence that maybe they shouldn't have found Sitow's opinion to be persuasive, or they may not have found Mr. Blanco to be persuasive. But the fact of the matter is they did. And they're the ones that make the determination, not us. We don't get to do a redo up here. I think what's significant in this instance, Your Honor, is that Arbitrator Falcioni did not believe that the petitioner or Mr. Blanco had proved a causal connection. But Arbitrator Falcioni is not the fact finder. The Commission is. There are decisions by the Illinois Supreme Court which indicate that when the Commission's decision is against the manifest weight of the evidence, the arbitrator's decision may be given legal effect. That presupposes that the Commission's decision is against the manifest weight of the evidence. I think what you, and it's not just directed at you, it's three quarters of the workers' compensation bar doesn't understand the fact that just because the Commission could have decided the case in the other direction doesn't mean that it's against the manifest weight of the evidence. Manifest weight of the evidence means there really doesn't necessarily have to be any one right answer. It's just that the fact finder gets to pick which answer they want. And they pick. So. I understand, Judge. As a corollary to that, though, I mean, there has to be some underlying support for their pick. And so your argument is to be addressed at why that is not sufficient, obviously. And that's what you're saying, trying to say. Is that correct? It is, Your Honor. It's our position that it's difficult that the causation opinion in this case was issued four years after the accident when Dr. Sital began treating Mr. Blanco in 2009. He didn't issue a causation opinion until 2011. At the time of his first visit on March 20, 2009, he did not offer any opinions as to the causation of Mr. Blanco's care or current condition of well-being. What's even more significant is that there was not a disc herniation documented in the two immediate MRIs following the accident. The disc herniation. Now, Sital is a treating physician. Yes, Your Honor. Right. So he's kind of busy not practicing workers' comp laws and then treating his patient, isn't he? So his giving an opinion at the time of his treating might not be all that persuasive, would it? Your Honor, I think what's more significant is the fact that the surgical recommendation did not arise until the later MRIs, namely the August 20, 2009 MRI, as well as the 2010 MRI. So you're saying he had, the record doesn't show he had any problems with his back until then? Is that your position? Your Honor, our position is that there were, Mr. Blanco sustained a minor injury as a result of his slip and fall, namely a lumbar spine sprain and that he did have degenerative findings in his back as documented on the earlier MRIs. Were there any medical opinions presented to support your conclusion? We did have our expert, Dr. Bernstein, produce two opinions in this matter. To support that position, Your Honor. So his opinion, is the sprain resolved? Dr. Bernstein did not believe that the surgery Mr. Blanco ultimately underwent in September 2010 was causally related to the accident in March 2007. So can you answer a question? Who's Dr. Abramson or Adamson and Shabria? Who are they? Dr. Adamson and Dr. Shabria, Shabria, excuse me, Your Honor, are additional physicians that Mr. Blanco treated with. After Mr. Blanco had seen Dr. Sitow, he went for a second opinion and sought Dr. Did they also recommend surgery? Dr. Adamson recommended surgery. However, he did not offer an opinion as to the cause for that surgery. So Sitow really is not the only doctor who recommended surgery, correct? No, Your Honor. I don't believe that there is a dispute that Mr. Blanco ultimately needed surgery. Our dispute is as to whether that need for surgery was causally related to his work accident. So he just had a degenerative condition that flared up? That is our position, Your Honor. Based upon these arguments and those contained in our brief, we respectfully ask the court to reverse the commission's decision and find it against the manifest rate of the evidence. Thank you. Thank you, counsel. You have time to reply. Good morning. May it please the court, counsel. My name is Jim Ridge. I represent Mr. Blanco in this matter. As Justice Hudson and Hoffman pointed out, the issue is whether or not there is sufficient evidence in the record to justify the commission's decision. Counsel, the appellant, is contending that, in fact, they point out in their brief that this court must reverse because the record is devoid of any evidence showing cause and connection. That's not true. That's not true whatsoever. Dr. Sittow, and by the way, I'm not aware of any requirement under the law that a doctor has to give a cause and connection statement any time after an accident, if it's two years, three years later. That's when you rendered the report. You're actually right about that. Thank you. That's one time I'm right. Thank you. We'll start with Dr. Sittow. A board-certified neurosurgeon that did the surgery and has received 398 of the record. We have his report, which was rendered in February 2011. He, in the body of the report, talks about the cause of connection, and he ends the report saying, once again, I believe he had a work-related injury due to the fall of March 13, 2007, and this ultimately required his degenerative L5S1 condition to require surgical intervention. Clear-cut cause of connection. Counsel was talking about him reaching MMI by Dr. Tack in June of 2008. That's not completely correct either. What it is, is that not only does Dr. Bernstein, their IME doctor, only half-cite Dr. Tack, but counsel now, in their brief, is doing the same thing. They say that the doctor said he's not a candidate for surgery, period. The actual phrase is that I do not think this patient is a good candidate for surgical treatment at this time. At this time. I discussed the situation in detail with the patient, as well as the potential surgical options if his symptoms progress and become functionally limited. He wasn't at maximum medical healing at all at that time. In fact, when he saw the doctor on that date, the patient continues to experience chronic back pain with intermittent lower extremity radicular symptoms. Justice Hudson had asked about Dr. Shabria. He's a board-certified neurologist, and his impression when he saw him before, this is in 2000, February 19, 2010, he said that my client had a herniated disc, left leg pain, and recommended that there be a surgical evaluation by Dr. Sintow for consideration of surgical intervention. All right. Aside from doctors and the medical evidence back and forth, as I asked the question earlier, wasn't there also evidence in the record to support the commission's decision, aside from the opinion of the experts? Yes, David. What it was, was he was hurt. There's a clear-cut accident, complaints of pain, constant treatment. Then there was a question about a gap in treatment. He couldn't get it authorized. Every record, every medical record talks about this accident. No evidence of any pre-existing back problems? Not much, Robert. You didn't have any slip, trip, and fall, motor accident, anything after that? The other one, Dr. Gammonson, he's a board-certified neurosurgeon, the second neurosurgeon that said this man needs the surgery. Dr. Bernstein, in half-quoting Dr. Katz, says this is a back strain. He doesn't need any treatment whatsoever. Contrary to what counsel put in their brief, the commission went out of their way to specifically rebut their contention, where they said that the respondent's argument that Dr. Hebbel, who's a board-certified radiologist that found her herniated disc long before, and Dr. Shabrie and Dr. Gammonson never provided a clause of connection opinion is not accurate. Petitioner stated on the record that the medical records were being introduced into the evidence with the specific understanding that each doctor would testify to a causal connection between the accident, his current condition, and the need for surgery. The respondent never objected. That's the commission's decision. So what we have is, is there sufficient evidence in the record to find that the commission's decision is reasonable? Absolutely. Every medical record talks about the accident. Every treating doctor says there's a causal connection. There's no intervening accident. Counsel's upset the fact that my client had the surgery later. Well, you try conservative treatment as long as you can, but conservative treatment does not always heal an individual. That's why God created surges. It's after conservative treatment fails that then they have to do the surgery. They went the proper way on this. So, weighing all the facts, there's nothing that shows that this is against the manifest weight of the evidence. Are there any questions, ma'am? Thank you. I believe there are. Thank you, counsel. Counsel, you may reply. Your honor, we'll rest on our prior arguments. Thank you. Okay. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and a written disposition shall issue.